UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO: 0:22-cv-60843-COOKE/HUNT

ROBERT CONREY, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.

BEACH BOYS OF FT. LAUDERDALE, LLC,
and KRIKOR KEVORKIAN, individually,

    Defendants.

_____/

**PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF FLSA
COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

    Plaintiff, ROBERT CONREY ("Conrey"), on behalf of himself and all other similarly situated individuals, respectfully moves, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 216(b), for entry of an order: (i) conditionally certifying this proposed FLSA collective action; (ii) ordering Beach Boys of Ft. Lauderdale, LLC and Krikor Kevorkian ("Defendants") to produce a computer readable data file containing the names, last known mailing addresses, Social Security numbers (for those notices returned undeliverable), for all members of each Collective; (iii) authorizing the issuance of notice to all members of each Collective by U.S. Mail, email, text message, and a reminder notice during the opt-in period. Such relief is appropriate for the reasons set forth herein.

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

    Defendants operate a restaurant and bar on Fort Lauderdale Beach. During the past 3 years Defendants have employed dozens of hard-working Servers and Bartenders who perform substantially similar duties and tasks that are instrumental to the success of the restaurant. These Servers and Bartenders, however, have been denied applicable federal overtime wages. Defendants have also pilfered and retained a portion of the tips earned by the Servers and Bartenders each shift they worked within the past 3 years. Plaintiff filed this

collective action lawsuit seeking to recover the overtime wages and tips that were unlawfully taken from himself and other similarly situated Servers and Bartenders. Plaintiff, himself, worked for Defendants as both a Server and Bartender and performed substantially the same duties regardless of his job title. Plaintiff alleges that Servers and Bartenders in the restaurant work in excess 40 hours per week but are not compensated the applicable overtime wages. Plaintiff seeks to recover all unliquidated damages, unlawfully taken tips, and liquidated damages based on willful violations of the FLSA, 29 U.S.C. § 216(b) for Defendants' implementation and enforcement of these unlawful policies. On May 12, 2022, Plaintiff, Conrey, and Opt-In Plaintiffs Jessie Cabuang ("Cabuang"), and Macarena Vargas ("Vargas") each filed their Consent to Sue under the FLSA. *See,* D.E. 8-1; D.E. 9-1; D.E. 10-1. On May 16, 2022, Marvin Mann ("Mann") filed his Consent to Sue under the FLSA.[1] *See* D.E. 12-1. Plaintiffs now move this Court to conditionally certify the following collectives of similarly situated Servers and Bartenders:

| | |
|---|---|
| **Tip Collective:** | **All Servers and Bartenders who worked for Defendants in Fort Lauderdale, Florida, during the three (3) years preceding this lawsuit who were required to surrender any portion of their tips to Defendants.** |
| **Overtime Collective:** | **All Servers and Bartenders who worked for Defendants in Fort Lauderdale, Florida, during the three (3) years preceding this lawsuit who were required to work in excess of 40 hours in a workweek and were not compensated the applicable federal overtime wages.** |

Plaintiffs surpass the lenient burden for conditional certification with evidence demonstrating that all Servers and Bartenders at the restaurant are similarly situated because they perform substantially the same duties and responsibilities and are all subject to the same illegal tip and overtime policies. Plaintiffs have provided evidence that all Servers and

---

[1] Conrey, Cabuang, Vargas, and Mann collectively referred to hereinafter as "Plaintiffs."

2

Bartenders not only have substantially similar duties, but were subject to the same unlawful policies, and have provided amble evidence that enough individuals have already joined this action **and** that other Servers and Bartenders would join this case if given notice. This evidence includes declarations from multiple Servers and Bartenders who worked for Defendants within the past 3 years who allege they were subject to the same overtime and tip policies. Moreover, Plaintiffs identify other individuals who are interested in joining this lawsuit to recover their hard-earned wages and tips.

This evidence fully supports an Order conditionally certifying this case and approving notice to all of Defendants' Servers and Bartenders who were employed and performed work during the previous three (3) years (the "Collective" or "FLSA Class"). Such an order would be consistent with precedent from federal courts in the Southern District of Florida which allow notice in FLSA collective actions under similar circumstances involving restaurants. *See* Didoni v. Columbus Restaurant, LLC, 327 F.R.D. 475 (S.D. Fla. 2018) (granting conditional certification where employer unlawfully retained tips from restaurant workers); Compere v. Nusret Miami, LLC, 391 F.Supp.3d 1197 (S.D. Fla. 2019) (granting conditional certification where employer allegedly failed to pay overtime wages to restaurant workers); Campbell v. Pincher's Beach Bar Grill Inc., 2016 WL 3626219 (M.D. Fla. 2016) (granting conditional certification for collective comprised of servers and bartenders at one restaurant location). Through this Motion, Plaintiffs seek to protect the rights of dozens of Servers and Bartenders by sending them Court-approved notice of this action and allowing them to decide whether to join.

## II. FACTS

### A. Servers and Bartenders are Similarly Situated

#### 1. Servers and Bartenders Held Similar Duties

Plaintiff, Conrey, worked for Defendants from late February / early March 2021 through May 2022. *See* D.E. 8-1; *see, also,* Declaration of Robert Conrey attached as **Exhibit A**. From March 2021 through June 2021 Conrey worked for Defendants as a Server. *See* D.E. 5, 28-29; **Exhibit A**. Conrey then worked as a Bartender from June 2021 through his termination in May 2022. *Id.* Conrey's duties and responsibilities as a Server and Bartender were substantially the same in that he would serve customers food and drinks in the restaurant and/or bar area and regularly engage with customers to enhance their overall experience. *Id.*

3

Conrey was required to perform the same type and scope of side work regardless of whether he worked as a Server or Bartender. *Id.* During Conrey's employment at the restaurant, Defendant, Kevorkian, was the restaurant's owner, and oversaw the operations of the restaurant and implemented and enforced the pay policies at issue. *Id.*

Opt-in Plaintiff, Cabuang, worked as a Bartender from February 2021 through May 2022. *See* D.E. 9-1; *see, also,* Declaration of Jessie Cabuang attached as **Exhibit B**. Cabuang shared the same duties and responsibilities as Conrey and often worked some of the same shifts together. *Id.* According to Cabuang, the Servers and Bartenders perform substantially the same duties and responsibilities – namely serving customers food and drinks in the restaurant and/or bar area. *Id.* Cabuang also claims that whenever Conrey worked as a Bartender he performed substantially the same duties and responsibilities as when Conrey worked as a Server. *Id.* During Cabuang's employment at the restaurant, Defendant, Kevorkian, owned the restaurant and oversaw its operations and implemented and enforced the pay policies at issue. *Id.*

Opt-in Plaintiff, Vargas, worked as a Server from March 2021 through April 2022. *See* D.E. 10-1; *see, also,* Declaration of Macarena Vargas attached as **Exhibit C**. Vargas' duties and responsibilities as a Server were substantially similar to those of a Bartender. *Id.* Vargas worked several shifts with Conrey and Cabuang all worked several shifts together during their employment period and performed substantially similar duties and responsibilities. *See* **Exhibit A; Exhibit B; Exhibit C**. All of these duties involved serving customers in the restaurant and/or bar by providing food and beverage service. *See* Id. Defendant, Kevorkian, owned the restaurant during this time period, and oversaw the operations of the restaurant and implemented and enforced the pay policies at issue. *Id.*

Opt-in Plaintiff, Mann, worked as a Server and Bartender from January 2020 through January 2021. *See* D.E. 12-1. Mann worked as both a Server and Bartender during this time period. *Id.* During Mann's employment at the restaurant, he worked more than 40 hours in one or more workweeks but was not compensated full overtime wages, and was further required to surrender portions of his tips to the restaurant. *Id.* Defendant, Kevorkian, owned the restaurant and oversaw its operations and implemented and enforced pay policies at issue. *Id.*

### 2. Defendants Required All Servers and Bartenders to Surrender Portions of their Tips Each Shift to the Restaurant

Defendants implemented and enforced a common and widespread policy of requiring all Servers and Bartenders to surrender 35% of their hard-earned tips they earned each shift during the past 3 years to their employer. *See* **Exhibit A**; **Exhibit B**; **Exhibit C**; D.E. 12-1. Pursuant to this policy (which was implemented and enforced by Kevorkian), Defendants violated the FLSA each and every time they retained a portion of a Servers or Bartenders' tips. *Id.* Regardless of their job duties or titles, Defendants consistently required Servers and Bartenders, alike, to surrender 35% of their earned tips to the restaurant each shift. *Id.* Defendants thereafter retained the benefit of these tips and did not redistribute these tips to any other workers in the restaurant. *Id.* Plaintiffs all suffered from this policy and claim that there are dozens of other similarly situated Servers and Bartenders from the past 3 years who similarly suffered from this policy. *Id.*

### 3. Defendants Required Servers and Bartenders to Work in Excess of 40 Hours Per Week Without Paying the Appropriate Overtime Premiums

In one or more workweeks within the past 3 years the Defendants have required their Servers and Bartenders to work in excess of 40 hours per week. *See* **Exhibit A**; **Exhibit B**; **Exhibit C**; D.E. 12-1. Conrey, Cabuang, Vargas, and Mann have all worked in excess of 40 hours in one or more workweeks. *Id.* However, Defendants failed to compensate Conrey, Cabuang, Vargas, Mann, and other Servers and Bartenders in accordance with the full overtime wages they were owed under the FLSA. *Id.* More specifically, Defendants failed to compensate their Servers and Bartenders 1.5 times the applicable hourly rate when they worked more than 40 hours in one or more workweeks within the past 3 years. *Id.* Defendants systematically failed to comply with the FLSA as it applies to the Servers and Bartenders who worked in excess of 40 hours in a workweek and these policies applied to Servers and Bartenders alike throughout the restaurant. *Id.*

### III. MEMORANDUM OF LAW

#### a. Motion for Conditional Certification of FLSA Collective Action

The FLSA permits an employee to bring a collective action on behalf of himself or herself, and for "other employees similarly situated." *See* 29 U.S.C. § 216(b); <u>Hipp v. Liberty Nat'l Life Ins. Co.</u>, 252 F.3d 1208, 1216 (11th Cir. 2001). In the interest of judicial economy,

district courts have discretionary power to authorize the sending of notice to potential class members. *See* Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 171 (1989). To be bound by the case's outcome, an employee must opt into a collective action by filing a written consent to join the action. Albritton v. Cagles, Inc., 508 F. 3d 1012 (11th Cir. 2007). To facilitate notice to similarly situated employees, district courts have authority to compel employers to provide the name and addresses of potential Plaintiffs. Hoffman-La Roche Inc., 493 U.S. at 170-71. This includes sending court-authorized notice to potential opt-in Plaintiffs regarding the lawsuit and their statutory right to join. *Id*. The authority to supervise notice derives from the broad discretionary power to manage the judicial process. *Id.* at 169-72.

    b.  **The Two-Tiered Approach to Conditional Certification**

"The FLSA speaks in broad strokes, and does not specify the details of how collective actions are to proceed, and thus, the management of these actions has been left to the discretion of court." Hannah v. Huntington National Bank, 2020 WL 2571898 at *5 (N.D. Ill. May 21, 2020) (citing the Supreme Court in Hoffman-La Roche Inc., 493 U.S. at 170-71). To grant conditional certification of a collective action, most courts require a finding that there are other employees who: (1) are **similarly situated** with regard to their job requirements and pay provisions; and (2) **desire to opt-in** to the case. *See* Dybach v. Fla. Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991) (emphasis added); *see also* Hannah, 2020 WL 2571898 at *5 (explaining that "most courts . . . have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action") (citing 7B Charles Alan Wright & Miller, *Federal Practice and Procedure § 1807*, (3d ed. 2020)); Didoni v. Columbus Restaurant, LLC, 327 F.R.D. 475, 478 (S.D. Fla. 2018).

The first step of conditional certification under the FLSA is lenient, and typically involves conditionally certifying a class for notice purposes to get word out about possibly joining the case. Hannah, 2020 WL 2571898 at *5; *see also* Hipp., 252 F.3d at 218 (Supreme Court holding that because the court has minimal evidence at the first step of conditional certification, the determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class); *see also* McClean v. On the Half Shell, Inc., No. 3:17-cv-1434-J-20MCR, 2018 WL 8578016, at *2 (M.D. Fla Oct. 24, 2018) (explaining that the Court utilizes a lenient standard at the first stage of conditional certification). At the notice stage, the district court makes a decision – usually based only on

the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members. *See* Didoni, 327 F.R.D. at 478-79 *citing* Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1243 at n.2 (11th Cir. 2003).

Southern District of Florida courts have granted conditional certification in FLSA restaurant cases where servers claimed they were required to share a portion of their tips with ineligible recipients. *See, e.g.,* Brock v. 50 Eggs, Inc., 2016 WL 10933025 at *2 (S.D. Fla. 2016) (Judge Lenard granting conditional certification even where defendant denied that it required servers to share tips with ineligible recipients); *see, also,* Didoni v. Columbus Restaurant, LLC, 327 F.R.D. 475 (S.D. Fla. 2018) (Judge Altonaga granting conditional certification where servers were required to surrender a portion of the tips to their employer). In Brock, 2016 WL 10933025 at *2, Judge Lenard held that "a court adjudicating a motion to authorize a collective action need not evaluate the merits of plaintiffs' claims in order to determine whether a similarly situated group exists." *Id. citing* Kreher v. City of Atlanta, Ga., 2006 WL 739572 at *4 (N.D. Ga. 2006) *quoting* Young v. Cooper Cameron Corp., 229 F.R.D. 50, 55 (S.D.N.Y. 2005); *see, also,* Scott v. Heartland Home Fin., Inc., 2006 WL 1209813 at *3 (N.D. Ga. 2006) (noting that at the notice stage "it is not appropriate for the Court to address the merits of the Plaintiffs' claims or weigh the evidence").

Your Honor has likewise granted conditional certification in an FLSA case where a single plaintiff and 3 other employees presented evidence of other individuals interested in pursuing claims. *See, e.g.,* Johnson v. Senior Health Care Services, Inc., 2005 WL 8154716 at *2 (S.D. Fla. 2005) (Cooke, J.); *see, also,* Reyes v. AT&T Corp., 801 F.Supp.2d 1350 (S.D. Fla. 2011) (Cooke, J.) (granting conditional certification where it was clear that a reasonable basis exists to believe there are other employees who desire to opt-in). Courts are increasingly willing to grant conditional certification in restaurant cases where the challenged policies are limited to one restaurant location. Campbell v. Pincher's Beach Bar Grill Inc., 2016 WL 3626219 (M.D. Fla. 2016) (granting conditional certification for collective comprised of servers and bartenders at one restaurant location).

    c. **Servers and Bartenders are Similarly Situated Under the Lenient Conditional Certification Standard as it Relates to the Tip Collective**

        i.    **The FLSA Expressly Prohibits Employers from Retaining Tips**

On March 23, 2018, Congress passed the Consolidated Appropriations Act of 2018 (CAA), which amended Section 203(m) of the tip provisions of the FLSA to add the following language: "**An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit**." The CAA also amended another FLSA provision – Section 216(b) – to state that "[a]ny employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

The Department of Labor has promulgated regulations concerning an employer's participation in a tip sharing arrangement. Pursuant to 29 C.F.R. § 531.54:

> Section 3(m)(2)(B) expressly prohibits employers from requiring employees to share tips with managers or supervisors, as defined in § 531.52(b)(2), **or employers, as defined in 29 U.S.C. § 203(d)**.

29 C.F.R. § 531.54(b)(1).

Notably, even where an employer does not take a tip credit under the law, it is still prohibited from retaining any portion of an employee's tips. *See* 29 U.S.C. 203(m)(2)(B).

### ii. Members of the Tip Collective are Similarly Situated

Courts commonly consider the following five factors at the conditional-certification stage to determine whether individuals are similarly situated:

(1) Whether the plaintiffs held the same job title;
(2) Whether they worked in the same geographic location;
(3) Whether the alleged violations occurred during the same time period;
(4) Whether plaintiffs were subjected to the same policies and practices and whether the policies and practices were established in the same manner and by the same decision maker; and
(5) The degree to which the actions constituting the claimed violations are similar.

*See* Didoni, 327 F.R.D. at 480 *citing* Smith v. Tradesmen Int'l, Inc., 239 F.Supp.2d 1369, 1372 (S.D. Fla. 2003).

In determining whether employees are similarly situated, the Court should also consider whether the employees are similar with respect to their job requirements and pay provisions. *See* Dybach, 942 F.2d at 1567-68. Plaintiffs need show only 'that their positions are similar, not identical," to the position held by the putative class members. McClean, 2018 WL 8578016, at *2. The similarly situated requirement of the FLSA within 29 U.S.C. § 216(b) is more elastic and less stringent than the requirements of Rule 23 (as to class actions) Rule 30 (as to joinder) and Rule 42 (as to severance). *See Id. citing* Grayson v. K-Mart Corp., 79 F.3d 1086, 1095 (11th Cir. 1996). The Plaintiff must show only a "reasonable basis" for his claim that there are other similarly situated employees. Morgan v. Family Dollar Stores, 551 F.3d 1233, 1260-61 (11th Cir. 2008). Moreover, the Plaintiff(s) need only produce "substantial allegations that the putative class members were together victims of a single decision, policy, or plan." Thiessen v. Gen. Electric Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001); *see also* Hipp, 252 F.2d at 252 (11th Circuit holding that conditional certification is proper in collective actions there exists common plan or scheme that led to the alleged FLSA violations); *see also* Butler v. Oak Street Mortg., LLC, 2006 WL 5519070 at *2 (S.D. Fla. Dec. 22, 2006); *see also* McClean, 2018 WL 8578016, at *3 ("Plaintiffs' burden at the conditional class certification stages requires only a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law") (*quoting* Russell v. Ill Bell Tel. Co., 575 F.Supp.2d 930, 933 (N.D. Ill 2008). The fact that there may be "variations in positions and job functions" among the proposed class "does not, at this preliminary stage, change the result." *See, e.g.,* Valerio v. RNC Industries, LLC, 314 F.R.D. 61, 73 (E.D.N.Y. 2016) (Conditionally certifying collective of hourly manual laborers).

The Tip Collective challenges the validity of Defendants' tip policy which requires all Servers and Bartenders to surrender 35% of their hard-earned tips to the restaurant each shift. This tip policy caused FLSA violations for dozens of employees because all Servers and Bartenders are required to surrender a portion of their tips to their employer in violation of the recent amendments to the FLSA. Evidence demonstrates that all Servers and Bartenders shared substantially the same or similar duties; worked at the same restaurant location within the past 3 years; were subject to the same tip policy which was implemented and enforced by Kevorkian; and suffered the same type of violations regardless of their designation as Servers

9

or Bartenders. *See* **Exhibit A; Exhibit B; Exhibit C;** D.E. 12-1. This is because Defendants uniformly applied their tip policy to every member of the waitstaff regardless of whether they were a Server or Bartender. *See* Id.; *see, also,* Compere, 391 F.Supp.3d at 1203 *citing* Stuven v. Texas de Brazil (Tampa) Corp., 2013 WL 610651 at *4 (M.D. Fla. 2013) ("At this stage of the litigation, what the employee serves – food or beverages – is a minor distinction"). Thus, Plaintiff, Opt-In Plaintiffs, and all other Servers and Bartenders employed at the restaurant within the past 3 years are unified by a common theory of FLSA violations, caused by Defendants' unlawful tip policy. This is precisely the type of claim that courts recognize as being appropriate for conditional certification of FLSA claims. Didoni, 327 F.R.D. at 480 (conditional certification of FLSA claims appropriate when servers were required to surrender a portion of tips to employer "common policy or plan that violated the law"); O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 585 (6th Cir. 2009) (conditional certification of FLSA claims appropriate when employees were "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct"); *see also* Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 547(6th Cir. 2006) (explaining that conditional certification of FLSA collective action is appropriate when plaintiffs make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy that violated the FLSA);[2] *see also* Chalker v. Burlington Coat Factory of Fl, LLC, 2013 WL 594784 at *1 (M.D. Fla. Nov. 7, 2013) (Merryday, J) (explaining employee may prove that he is similarly situated for the purpose of conditional certification if he shows that he is the victim of a corporately derived (and not isolated) policy or plan that violated the law along with the putative class); *see also* Robinson v. Sailormen, Inc., 2016 WL 1152840 at *5 (N.D. Fla. Nov. 18, 2016) (Walker, J.) (explaining that the 11th Circuit has never defined the term "similarly situated" for purposes of FLSA

---

[2] For some courts, a "blanket" policy, like Defendants' policy, without much more, can meet the low threshold for conditional certification. *See* Butler v. DirectSat USA, LLC, 876 F. Supp. 2d 560, 566 (D. Md. 2012) (conditional certification of FLSA Claims is appropriate when Plaintiffs make a modest factual showing that a common policy, scheme, or plan that violated the law existed); *see also* Damasia v. Duane Reade, Inc., 250 F.R.D. 152, 159 (S.D.N.Y 2008) ("That" [defendant] itself makes such a blanket determination is evidence that differences in the position . . . are not material to the determination of whether the job is exempt from overtime requirements.").

actions, and that some courts (in the Middle District of Florida) require the Plaintiff and the putative class to prove that they were together the victims of a single decision, policy, or plan, but courts typically require the Plaintiffs only to show his position was similar – not identical – to those of the putative class, which is a lower standard).Because it is not proper for the Court to make credibility determinations or conduct individualized inquiries at the conditional certification phase, this evidence alone is enough for the Court to grant conditional certification. *See* Hipp, 252 F.3d 1219 (rejecting employer's contention that each potential class member was unique and required an individual analysis of their working conditions); *see also* McClean, 2018 WL 8578016, at *4 (factual issues are not considered at the notice stage of conditional certification); Peña v. Handy Wash, Inc., 28 F. Supp. 1289,1300 (S.D. Fla. 2014) ("The Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make creditability determination" at the conditional certification stage).

> iii. **The Court Should Authorize Notice to Putative Members of the Tip Collective Because Plaintiffs Have Sufficiently Shown Other Similarly Situated Employees Desire to Opt-in**

With respect to the second requirement for conditionally certifying a class, an employee must show that there are other employees who would opt-in, if given notice. *See* Mackenzie v. Kindred Hosps. E., LLC, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003). "The existence of just **one** other co-worker who desires to join in is sufficient to raise the Plaintiff's contention beyond one of pure speculation . . . [c]ourts in this district have conditionally certified classes with as few as two affidavits from potential Plaintiffs." *See e.g.,* Garcia v. J&J, Inc., 2019 WL 3457613 at *3 (S.D. Fla. July 31, 2019) *quoting* Rojas v. Garda CL Se., Inc., 297 F.R.D. 669, 677 (S.D. Fla. 2013) (emphasis added); *see also* Benjamin v. Right Path Behavvioral Health Servs. LLC, No. 3:17-cv-457-J-39MCR, 2018 WL 922350, at *3 (M.D. Fla. Feb. 7, 2018) ("Considering the fairly lenient standard, the two opt-in plaintiffs, and the three declarations, the Court finds that the Plaintiff has satisfied his burden of demonstrating a reasonable basis for his claims that there are other similarly situated [employees]); Wynder v. Applied Card Sys., Inc., No. 09-80004, 2009 WL 3255585 (S.D. Fla. Oct. 7, 2009) (granting conditional certification of FLSA collective action based on two affidavits: one of the single-named plaintiff and one opt-in plaintiff); Teahl v. The Lazy Flamingo, Inc., No. 2:13-cv-833-

FTM-38CM, 2015 WL 179367, at *6 (M.D. Fla. Jan. 14, 2015 ("Upon consideration of the lenient standard, two opt-in plaintiffs, and … declaration, there is a reasonable basis to believe that there are other employees who may desire to opt-in"); Harapeti v. CBS Telivision Stations, Inc., No. 20-cv-2096, 2020 WL 8083695 (S.D. Fla. Dec. 21, 2020) (granting conditional certification when 3 employees opted into the lawsuit); Compere, 391 F.Supp.3d 1197 (granting conditional certification where Plaintiff's affidavit and one other affidavit claimed that other similarly situated individuals would opt in to the action).

Here, Plaintiff and other Opt-In Plaintiffs have indicated their desire to vindicate their rights under the FLSA as it pertains to the unlawful tipping practices. *See* **Exhibit A**; **Exhibit B**; **Exhibit C;** D.E. 8-1; D.E. 9-1; D.E. 10-1; D.E. 12-1.  This evidence, alone, is sufficient to conditionally certify the Tip Collective. *See, e.g.,* Teahl v. The Lazy Flamingo, Inc., 2015 WL 179367 (M.D. Fla. 2015) (2 opt-ins who performed similar job duties as servers and bartenders provided reasonable basis to believe other employees may desire to opt-in); *see, also,* Johnson, 2005 WL 8154716 at *2 (Your Honor granting conditional certification of FLSA collective action where plaintiff and 3 other opt-ins had joined the case). However, Plaintiff and Opt-In Plaintiffs also claim that they have personal knowledge of other current and former employees who wish to opt-in to this case, but who, out of fear of retaliation, may be hesitant to join until Court-authorized notice is provided. **Exhibit A**; **Exhibit B**; **Exhibit C**. These concerns are particularly noteworthy because Conrey, himself, was terminated when Defendants found out that Plaintiff sought to vindicate his rights under the FLSA. *See* D.E. 5. Because Plaintiff and Opt-in Plaintiffs have shown that this policy affects all Servers and Bartenders in the restaurant, and that other similarly situated Servers and Bartenders wish to join, conditional certification is proper.

    **d. Servers and Bartenders are Similarly Situated Under the Lenient Conditional Certification Standard as it Relates to the Overtime Collective**

        **i.    Overtime Requirements Under the FLSA**

"The Fair Labor Standards Act… requires employers to pay overtime compensation to covered employees." *See, e.g.,* Goussen v. Mendez Fuel Holdings, LLC, 350 F.Supp.3d 1283 (S.D. Fla. 2018) (Cooke, J.) *citing* Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134, 1138 (2018). Employees who work more than 40 hours in a week must be compensated at 1.5 times their normal rate of pay for those extra hours. *See* 29 U.S.C. § 207(a)(1).

          **ii.**        **Members of the Overtime Collective are Similarly Situated**

The Overtime Collective challenges the restaurant's failure to compensate Servers and Bartenders applicable overtime wages when they worked more than 40 hours in a workweek. *See* D.E. 5. Failure to compensate the Servers and Bartenders the appropriate overtime wages caused violations for dozens of employees because Servers and Bartenders were not compensated in accordance with the FLSA. *Id.* Evidence demonstrates that all Servers and Bartenders shared substantially the same or similar duties; worked at the same restaurant location within the past 3 years; were subject to the same violations which were the result of overtime policies implemented and enforced by Kevorkian; and suffered the same type of violations regardless of their designation as Servers or Bartenders. *See* **Exhibit A**; **Exhibit B**; **Exhibit C;** D.E. 12-1. This is because Defendants uniformly failed to compensated Servers and Bartenders appropriate overtime wages regardless of their job titles. *See* **Exhibit A**; **Exhibit B**; **Exhibit C;** D.E. 12-1. Thus, Plaintiff, Opt-In Plaintiffs, and all other Servers and Bartenders employed at the restaurant within the past 3 years are unified by a common theory of FLSA violations, caused by Defendants' failure to pay appropriate overtime wages. This is precisely the type of claim that courts recognize as being appropriate for conditional certification of FLSA claims. Compere, 391 F.Supp.3d 1197 (conditional certification of FLSA claims granted for servers who claimed they were not compensated appropriate statutory overtime wages); O'Brien, 575 F.3d at 585; *see also* Comer, 454 F.3d at 547; Chalker, 2013 WL 594784 at *1; *see also* Robinson v. Sailormen, Inc., 2016 WL 1152840 at *5.

          **iii.**       **The Court Should Authorize Notice to Putative Members of the Overtime Collective Because Plaintiffs Have Sufficiently Shown Other Similarly Situated Employees Desire to Opt-in**

Here, Plaintiff and other Opt-In Plaintiffs have indicated their desire to vindicate their rights under the FLSA as it pertains to the overtime violations at the restaurant. *See* **Exhibit A**; **Exhibit B**; **Exhibit C;** D.E. 12-1. This evidence, alone, is sufficient to conditionally certify the Overtime Collective. *See, e.g.,* Teahl, 2015 WL 179367. Plaintiff and Opt-In Plaintiffs also claim that they are aware of other current and former employees who wish to opt-in to this case, but who, out of fear of retaliation, may be hesitant to join until Court-authorized notice is provided. **Exhibit A; Exhibit B; Exhibit C**; D.E. 12-1. Because Plaintiff and Opt-in Plaintiffs have shown that this overtime policy affects all Servers and Bartenders in the

13

restaurant, and that other similarly situated Servers and Bartenders wish to join, conditional certification of the Overtime Collective is proper.

## IV. NOTICE: SCOPE, FORM AND DISTRIBUTION

### A. All Servers and Bartenders From the Past 3 Years Should Receive Notice

The FLSA allows employees to collect damages within a three-year limitations period if they can show, as alleged in the Amended Collective Action Complaint, that an employer's FLSA violation was "willful" – meaning the "employer either knew or showed reckless disregard for the matter of whether its conduct prohibit the [FLSA]." McLaughlin v. Richard Shoe Co., 486 U.S. 128, 133 (1988); McClean, 2018 WL 8578016, at *4 (approving notice to be sent to employees who worked for Defendant "within three (3) years preceding the date notice is sent through the present"). Accordingly, the notice period should begin three (3) years prior to the date notice is sent in this case. Id.

### B. Notice Should be Provided to All Servers and Bartenders Who Are/Were Employed by Defendants Within the Past 3 Years

The evidence in this case establishes treatment of Servers and Bartenders was common, widespread and uniform throughout the restaurant within the past 3 years, as it pertains to the tipping and overtime practices. See Exhibit A; Exhibit B; Exhibit C; D.E. 12-1. Servers and Bartenders who performed work at the restaurant had the same or similar job duties and were subject to the same unlawful tip and overtime policies. Id. Accordingly, notice should be provided to all Servers and Bartenders employed by Defendants during the past 3 years. See Compere, 391 F.Supp.3d at 1197.

### C. Discovery and Notice Should be Expedited

The limitations period applicable to other putative class members continues to run until they opt-in to this case or file their own lawsuit. See 29 C.F.R. § 790.21(b)(2)(ii). As a result, the early data requested is time sensitive, both to ensure that putative class members are afforded an opportunity to timely preserve their rights, and to facilitate efficient and swift litigation. Accordingly, Plaintiffs request that the Court enter an Order expediting the notice and the discovery processes relating to this Motion for Conditional Certification.

In Hoffman-La Roche, Inc., the Supreme Court ruled that district courts are authorized to compel employers to provide names and addresses of potential Plaintiffs through the pretrial discovery process. 493 U.S. 165 (1989). The Supreme Court also held that

this authority includes sending court-authorized consent forms to potential Plaintiffs. *Id.* Court authorization of notice serves the legitimate goals of avoiding a multiplicity of duplicative suits and of setting cutoff dates to expedite disposition of the action. *Id.* at 487. As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice. *See* Hoffman-La Roche, Inc., 493 U.S. at 165; *see also* Dean v. W. Aviation, LLC, 2018 WL 1083497 at *3 (S.D. Fla. Feb. 28, 2018) (holding that expedited discovery from Defendants, consisting of the names, addresses, and e-mail addresses of all individuals within the class was "reasonable and necessary to provide appropriate notice to all potential Opt-In Plaintiffs"); Pares v. Kendall Lakes Auto., LLC, 2013 WL 3279803 (S.D. Fla. June 27, 2013); Fantauzzi v. Agora Marketing Solutions, Inc., 2010 WL 2220246 at *3 (M.D. Fla. June 2, 2010).

      Here, Plaintiffs seek expedited discovery production from the Defendants, within ten (10) calendar days of the Court's order granting this Motion, of a complete list of each and every person—including their last known home address, cellular telephone number, e-mail addresses and the last four digits of social security numbers—who was ever employed as a Server or Bartender at any time within the previous three (3) years. The FLSA class member data sought here is in line with the data that other District Courts have ordered Defendants to produce on an expedited basis following conditional certification. *See* Laos v. Grand Prize Motors, Inc., 2012 WL 718713 at *2 (S.D. Fla. Mar. 6, 2012) (Judge Scola requiring defendants to produce to Plaintiff, within fifteen (15) days of conditional certification order, a complete list of all putative class members, including their last known home address, telephone number, e-mail addresses, and the last four digits of the social security number, taxpayer ID number, and financial account numbers, of employees); *see also* Garcia, 2019 WL 3457613 at *6 (ordering defendants to produce a list in Excel spreadsheet format containing the names of all individuals who worked for defendants, along with each person's last known address and e-mail address, within ten (10) calendar days of the order approving conditional certification).

      **D. Proposed Court Approved Notice to Members of the Collective**

      Plaintiffs seek Court approval to furnish notice to putative members of the Tip Collective and Overtime Collective. A copy of the proposed notice is attached hereto as **Exhibit D.** The Eleventh Circuit has held that the district court has authority to issue an

order requiring notice to "similarly situated" employees of the defendant affording them the opportunity to "opt-in." *See, e.g.,* Dybach, 942 F.2d 1562 (11th Cir. 1991); *see also* Qiang Lu v. Purple Sushi Inc., 447 F.Supp.3d 89, 93 (S.D.N.Y 2020) ("The dissemination of notice in an FLSA collective action is in fact a case management tool …"). Plaintiffs also seek an Order from this Court requiring Defendants to display a poster notifying all current Servers and Bartenders of this lawsuit and their opportunity to join. *See* Proposed Posting for Restaurant attached as **Exhibit E**.

Plaintiffs' proposed notice is "timely, accurate, and informative." *See* Hoffman-La Roche, Inc., 493 U.S. at 172.  As such, the proposed notice achieves the ultimate goal of providing accurate and timely notice to employees concerning the pendency of the collective action, and thus it should be adopted. Because hourly Laborers work in various locations throughout the Florida and Georgia, traditional "posting" of the notice is not sufficient to provide notice to the entire putative class.  Accordingly, Plaintiffs request that Plaintiffs' Counsel be permitted to notify the potential 216(b) Class Members by e-mail, physical mail, telephone calls and/or by text message, as necessary, in addition to requiring the Defendants' to post conspicuous notice at their Florida headquarters.

Assuming the Court orders Defendants to produce the Class Member contact list within ten (10) calendar days, Plaintiffs request a total of 120 calendar days from the date the Court grants conditional certification for class members to submit their Consents to Join to Plaintiffs' Counsel (to allow ten (10) days for Defendants to furnish a comprehensive list of putative class information, twenty five (25) days for Plaintiffs' Counsel to prepare the notices to be sent, and an additional sixty (90) days for class members to submit their Consents to Join).  Denying notice to these individuals is tantamount to rewarding Defendants for their failure to properly compensate Servers and Bartenders and would allow them to continue to engage in these unlawful acts; each day that passes without these individuals filing their notice of consent is a windfall to Defendants because one more day of uncompensated hours is legally forfeited under the applicable statute of limitations.

    i. **E-mailing of Notice Should be Approved**

E-mail is an efficient, effective, and non-intrusive means of providing legal notice of one's rights.  Courts throughout Florida routinely determine that notice of a pending FLSA collective action is properly sent by e-mail (in addition to regular mail).  *See e.g.,* McClean,

16

2018 WL 8578016, at *4 (permitting e-mail to putative class members in FLSA collective action); Martinez v. DHL Express (USA) Inc., 2016 WL 455394 at *9 (S.D. Fla. Feb. 5, 2016) (same); Cooper v. E. Coast Assemblers, Inc., 2013 WL 308880 at *4 (S.D. Fla. Jan. 25, 2013); Stuven v. Texas de Brazil (Tampa) Corp., 2013 WL 610651 at *6 (M.D. Fla. Feb. 19, 2013) *citing* Simmons v. Enterprise Holdings, Inc., 2011 WL 1304732 at *1 (E.D. Mo. Apr. 6, 2011) (refusing to impose a presumption that notice by mail is the preferred method of providing notice, and concluding instead "that the better course is to determine what constitutes fair and proper notice based on the facts of each case").

    ii. **Physical Mailing of Notice is Proper**

In addition to e-mail notice, physical mailing of notice is an effective and efficient means of providing notice of a pending FLSA collective action, even when other means of notice are provided. *See e.g.,* De Leon v. Southern Transp. Grp., Inc., 2017 WL 2899977 at *1 (S.D. Fla. Jan. 23, 2017); *see also* Laos, 2012 WL 718713 at *6. Accordingly, should the e-mail notifications "bounce back" or otherwise be "undeliverable," Plaintiffs seek approval to provide notice to the physical mailing addresses for all current and/or former employees. More specifically, Plaintiffs seek leave to provide the proposed notice to each potential class member via first class mail with a pre-addressed and stamped return envelope. *See e.g.,* Martinez, 2016 WL 455394 at *9 (permitting notice to be sent via first class mail and a pre-addressed and stamped return envelope).

    iii. **Text Messaging of Notice is Proper Under the Circumstances**

Should notice via e-mail and physical mailing fail, Plaintiffs seek Court approval to provide notice via text message. Many courts have allowed text message notice in FLSA cases. *See, e.g.,* Thrower v. Universalpegasus, Int'l Inc., 2020 WL 5258521 at *11-12 (S.D. Texas, Sept. 3, 2020) (Text message notice approved in FLSA case because it would increase the likelihood that employees receive notice); Vasto v. Credico United States LLC, 2016 WL 2658172 (S.D.N.Y. 2016) (Text message notice approved in FLSA case); Eley v. Stadium Group, LLC, 2015 WL 5611331 at *3 (D.D.C. 2015) (Text message notice approved in FLSA case; Irvine v. Destination Wild Dunes Mgmt., 132 F.Supp.3d 707, 711 (D.S.C. 2015) (Text message notice approved in FLSA case found to be "eminently reasonable"); Bhumithanarn, 2015 WL 4240985, at *5 (S.D.N.Y. 2015) (Text message notice in FLSA case approved);

Chamorro v. Bahman Chermezian, S.D.N.Y. Case No. 12-cv-8159 at D.E. 17 (S.D.N.Y. 2013) (authorizing dissemination of FLSA 216(b) notice via text message).

### iv. **Plaintiff's Counsel Should Be Permitted to Post Notice on its Website**

The Court has discretion to permit notice in any manner which would facilitate swift and economic justice. Qiang, 447 F.Supp.3d at 93. Putative members of each collective will ostensibly visit the undersigned law firm's website when they receive mail and email notice. Therefore, Plaintiffs' Counsel would like to provide conspicuous notice on its website to "facilitate swift and economic justice." *See Id.* at 97 (permitting notice via mail, email, text, or social media platforms and permitting Plaintiff's counsel to post notice on its website). The proposed posting is attached as **Exhibit E**.

### v. **Reminder Notices are Proper and Should Be Permitted**

Plaintiffs also request permission to send a reminder notice to members of the putative class. In particular, Plaintiffs request permission to transmit a reminder notice to the putative class at the half-way point in the notice period. Plaintiffs' request is consistent with decisions from this Court and others across the United States which permit reminder notices to ensure putative class members are aware of their rights and the time within which to exercise the same. *See* McClean, 2018 WL 8578016, at *4 (permitting reminder notice at the half-way point in the Notice Period ); Martinez, 2016 WL 455394 at *9 (S.D. Fla. 2016) (allowing Plaintiffs to send a reminder postcard thirty (30) days after the notice was approved); Camano v. 7 Call Center Inc., 2016 WL 4704934 (S.D. Fla. Feb. 5, 2016) (holding that Plaintiff's follow-up reminder was appropriate to ensure putative class members become aware of their rights within the relevant time period).

## V.  **CONCLUSION**

**WHEREFORE**, Plaintiff, ROBERT CONREY, respectfully requests that the Court enter an order:

(1) granting conditional certification of the above styled Case as a collective action under the Fair Labor Standards Act for the following Tip Collective:

> **All Servers and Bartenders who worked for Defendants in Fort Lauderdale, Florida, during the three (3) years preceding this lawsuit who were required to surrender any portion of their tips to Defendants.**

(2) Granting conditional certification of the above styled Case as a collective action under the Fair Labor Standards Act for the following Overtime Collective:

> **All Servers and Bartenders who worked for Defendants in Fort Lauderdale, Florida, during the three (3) years preceding this lawsuit who were required to work in excess of 40 hours without being compensated the appropriate overtime wages.**

(3) appointing Plaintiff, ROBERT CONREY, as the Representative of each Collective with authority to negotiate and appear at mediations on behalf of each Collective;

(4) appointing the law firm of USA Employment Lawyers – Jordan Richards PLLC, and Jordan Richards, Esq., as lead counsel for the class;

(5) expediting discovery production from the Defendants, within 10 calendar days of the Court's Order granting this Motion, of a complete list, electronically in an Excel spreadsheet, of each and every Server and Bartender listed alphabetically from "A" to "Z" – including their last known home address, cellular telephone number, e-mail addresses, job location, and the last four digits of social security numbers, a separate field corresponding with each name – who was ever employed as a Server or Bartender by Defendants at any time within three (3) years of the date notice is sent;

(6) permitting Plaintiffs' counsel to send a Court-Approved Notice to all such persons about their rights to opt-in to this collective action by filing a Consent to Join Lawsuit (in the forms attached hereto and incorporated herein as **Exhibit D**);

(7) requiring Defendants to post in a conspicuous location at their restaurant the notice attached as **Exhibit E** for all current Servers and Bartenders to be apprised of their right to join this collective action lawsuit, and allowing Plaintiff's counsel to conspicuously post **Exhibit E** on the firm's website;

(8) granting the putative class 120 days to submit the Consents to Join forms;

(9) awarding such other and further relief as the court deems just and proper.

**V.    CONCLUSION**

WHEREFORE, Plaintiff, ROBERT CONREY, respectfully requests that this Honorable Court grant the instant motion and provide relief as set forth herein.

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS - JORDAN RICHARDS, PLLC**
1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33316
(954) 871-0050
*Counsel for Plaintiffs*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
DAVID NUDEL, ESQUIRE
Florida Bar No. 1003678
*jordan@jordanrichardspllc.com*
*jake@jordanrichardspllc.com*
*catherine@USAEmploymentLawyers.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing motion was filed through CM/ECF this 25th day of May 2022 and served on the parties listed below via United Parcel Service.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST

BEACH BOYS OF FT. LAUDERDALE, LLC
Attn: Registered Agent – Krikor Kevorkian
413 S. Fort Lauderdale Beach Blvd.
Fort Lauderdale, Florida 33316

KRIKOR KEVORKIAN
413 S. Fort Lauderdale Beach Blvd.
Fort Lauderdale, Florida 33316